**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SASSAMANSVILLE FIRE COMPANY NO. 1,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MARIE LIVELSBERGER, ET AL.,** | : | |
| *Defendants.* | : | **NO.  21-cv-4648** |
| | : | |

**MEMORANDUM**

KENNEY, J.                                                    MARCH 25, 2022

## I.    INTRODUCTION

Plaintiff, Sassamansville Fire Company No. 1 ("Plaintiff,") brought this action against Defendant New Hanover Township (the "Township,") the individual members of the New Hanover Township Board of Supervisors, Kurt Zebrowski, Marie Livelsberger, Boone Flint, William Ross Snook, and Gregory Maskrey (collectively "the Board of Supervisors,") and the Manager of New Hanover Township, Jaime Gwynn, ("Defendant Gwynn") (collectively "Defendants."). Plaintiff claims Defendants deprived it and its members of their rights and endangered the public when the Board of Supervisors amended the Township of New Hanover Code of Ordinances (the "Township Code") terminating Plaintiff's recognition as an authorized volunteer fire company in New Hanover Township. Am. Compl. ¶ 1, ECF No. 8.

Plaintiff brings five claims pursuant to 42 U.S.C. § 1983, denial of substantive due process (Count I), denial of procedural due process (Count II), denial of equal protection (Count III), *Monell* liability (Count IV), and liability pursuant to state-created danger doctrine (Count

V).  On the basis of these claims, Plaintiff requests damages for the value of its terminated

benefits, its lost income and lost opportunities, punitive damages, and equitable relief to strike

the Township's ordinance amending the Township Code, and equitable relief to order the

Township Board of Supervisors to engage in "a full and fair process of addressing and

responding to [Plaintiff's] questions and concerns," "professional and attorneys' fees and costs,"

and any other relief the Court deems just and proper. *Id.* at ¶ 122.

Plaintiff served New Hanover Township with fire protection and community services for

more than fifty years, and understandably is upset that the Township no longer recognizes it as a

volunteer fire company. But Plaintiff's grievances against the Township, like any citizen's

complaints about how their town is managed, do not rise to the level of constitutional violations.

For such issues, redress is found not at the courts, but at the polls. Because we find Plaintiff fails

to state a claim upon which relief can be granted, the Amended Complaint is hereby dismissed.

## II.    BACKGROUND[1]

Plaintiff provided volunteer fire and rescue services, community services, and

recreational events for the benefits of its members and the residents of New Hanover Township

("the Township") since the fire company's creation in 1949. Am. Compl. ¶¶ 12–13. In August

1995, the Board of Supervisors enacted Section 1-601 of the Township Code granting Plaintiff

the authority to participate in mutual aid, training schools, parades, and other municipal

functions, and granting Plaintiff access to workmen's compensation benefits and other benefits

---

[1] The Court accepts all factual allegations as true and construes all allegations and reasonable inferences in the light most favorable to the nonmoving party. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) (citation omitted). In deciding a motion to dismiss, this Court considers the pleadings and attached exhibits, undisputedly authentic documents attached to the motion where the claims are based on those documents, and matters of public record. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

in the case of death, sickness, or temporary or permanent disability. *Id.* ¶¶ 15, 18-19. As a Township-recognized volunteer fire company, Plaintiff also had the ability to request federal funds, loans from the State Fire Commissioner and the State Treasurer, and Treasury Department grants pursuant to the Emergency Management Relief Act, 35 P.S. 1221. *Id.* ¶¶ 16-17.

In or about May 2013, Plaintiff's members accepted a proposal to combine resources with the New Hanover Fire Company and form a new entity called New Hanover Volunteer. *Id.* ¶ 21. In August 2013, Plaintiff's official representative, Joshua Stouch, issued a letter (the "August 2013 Letter") indicating that Plaintiff had accepted a proposal to merge with the New Hanover Fire Company and form New Hanover Volunteer Fire and Rescue Services. *Id.* ¶¶ 21–22; Am. Compl. Ex. A, ECF No. 8-1. In the August 2013 Letter, Plaintiff did not indicate that it would discontinue operations in its own name. *Id.* ¶ 24.

In Fall 2014, Brian Lee, representing himself as the President of the New Hanover Volunteer Fire and Rescue Services, issued a letter ("the Fall 2014 Letter") acknowledging that the two volunteer fire companies had formed the New Hanover Volunteer Fire and Rescue Services. The Fall 2014 Letter did not state that Plaintiff would have to or would be expected to discontinue operations in its own name. Am. Compl. ¶¶ 25–28; Am. Compl. Ex. B, ECF No. 8-1. No formal merger documents were ever prepared, executed, or submitted to the Pennsylvania Department of State, Bureau of Corporations and Charitable Organizations. Am. Compl. ¶ 29.[2]

On November 7, 2014, Plaintiff leased the fire station portion of its real property located at 1865 Hoffmansville Road, Frederick, PA 19435 to the New Hanover Volunteer Fire and Rescue Services. *Id.* at ¶ 31; Am. Compl. Ex. C, ECF No. 8-1. By December 2015, Plaintiff had

---

[2] The parties contest whether the two fire companies were formally and effectively merged. We make no finding on this issue because we find that even assuming the fire companies were never merged, the Amended Complaint should be dismissed.

"largely discontinued separate, formal responses to emergency calls" because it had transferred

its fire house, fire equipment, and fire vehicles to New Hanover Volunteer Fire and Rescue

Services. Am. Compl. ¶¶ 34 -35. Plaintiff continued to host community social events and raise

funds for charity, and some of Plaintiff's individual members continued responding to

emergency calls. *Id.* ¶ 36.

In early 2017, Plaintiff initiated litigation against New Hanover Volunteer Fire and

Rescue Services in the Court of Common Pleas of Montgomery County for breach of contract

for the merger agreement and the lease agreement, which the parties settled in 2020. *Id.* ¶¶ 37–

38; Am. Compl. Ex. D, ECF No. 8-1.

In a June 28, 2021 Board meeting, the Board of Supervisors discussed whether Plaintiff

still qualifies as a non-profit company for tax purposes and noted that the New Hanover

Volunteer Fire and Rescue Services requested to be recognized as the only fire and rescue

company in the Township. Am. Compl. ¶ 41. Defendant Township Manager Jamie Gwynn stated

that at the Board's July meeting, it would look at amending the Township Fire Company

ordinance. *Id.*

Before the July 1, 2021 meeting, the Board of Supervisors posted the agenda online, but

the agenda did not mention potential amendment of the Township Fire Company Ordinance. *Id.*

¶¶ 48–49.  Plaintiff asserts that the Board of Supervisors intentionally "left [the discussion of the

ordinance] off the agenda" to deprive Plaintiff of notice. *Id.* ¶ 51.  Additionally, the June 28,

2021 meeting minutes were not posted before the July 1, 2021 meeting. *Id.* ¶ 52. Lacking notice,

none of Plaintiff's members attended the July 1, 2021 meeting. *Id.* ¶ 54.

In that meeting, the Board authorized the solicitor to advertise the proposed removal of

Plaintiff from the Township Fire Company Ordinance and prepare the proposed change for

consideration at the Board's August meeting. *Id.* ¶ 55. On or about July 22, 2021, the Board

posted a classified ad on the Township website noticing a public hearing to consider an

amendment to delete Sassamansville Fire Company and Sassamansville Firemen's Relief

Association from Section 1-601 of the Township Code" ("the Proposed Amendment"). *Id.* ¶ 60.

Plaintiff further asserts that Defendants did not return Plaintiff's telephone calls and refused to

"engage in <u>any</u> good faith communication with [Plaintiff's] counsel as to the nature of and need

for" the Proposed Amendment before the August meeting. *Id.* ¶ 62 (emphasis in original).

The Board of Supervisors posted the agenda for the meeting on their website. *Id.* ¶ 63;

Am. Compl. Ex. I, ECF No. 8-1. At the August 5, 2021 meeting, the Board behaved "noticeably

[less] cooperative and pleasant" with Township residents that attended as Sassamansville Fire

Company members than with other Township residents. Am. Compl. ¶ 66.  During discussion of

other agenda items, the Board of Supervisors "pleasantly accepted questions from the public-at-

large, addressed such questions, and participated in meaningful discussions" and "did not

interrupt the speaker to demand their name and address." *Id.* ¶¶ 68–69.

When the Board of Supervisors began to consider the Proposed Amendment, Plaintiff's

counsel "sought clarification on the nature of the Proposed Amendment" but Defendant Gwynn

responded that "this is public comment" and insisted that "members of the Township be heard

first." *Id.* ¶¶ 70–73. Thereafter, when Plaintiff's members stood to speak, Defendant Gwynn

would "cut them off and demand that they 'state their name and address.'" *Id.* ¶¶ 74, 76.

Nevertheless, Plaintiff's members expressed their confusion and concern, informed "the

Township Supervisors that they did not execute or file with the DOS a 'Statement of Merger,'"

asked questions, and "vocalized that they did not want or need any Township funding but, rather,

just sought to preserve their recognition." *Id.* ¶¶ 74–78. Additionally, Plaintiff's members and

several Township residents stated "their support for maintaining two (2) volunteer fire companies instead of one, and [said that] Township's residents would only benefit from additional volunteer resources." *Id.* ¶ 79. The Board of Supervisors did not interrupt the only person who spoke in favor of the Proposed Amendment and did not ask his name or address. *Id.* ¶¶ 81–82.

At the conclusion of the public hearing, the Board of Supervisors did not address any of Plaintiff's issues at all, aside from offering that the possibility of Plaintiff serving as a volunteer fire company could be discussed at a later date. *Id.* ¶ 86. The Board of Supervisors voted unanimously to delete Sassamansville Fire Company and Sassamansville Firemen's Relief Association from Section 1-601 of the Township Code. *Id.* ¶ 90. The ordinance amending the Township Code, in its WHEREAS clauses, states "a request was made to New Hanover Township to update and clarify the entity authorized to conduct Activities of Volunteer Firefighters and to recognize the Volunteer Firefighters' Relief Association" and "the New Hanover Township Board of Supervisors believe the health, safety, and welfare of the community is best served by adopting the ordinance." Ordinance 21-06, Aug. 5, 2021, ECF No. 12 at 161–63. [3] In relevant part, section 1-601 of the Township Code, as amended, states as follows:

> The volunteer firefighters and fire police serving the New Hanover Volunteer Fire and Rescue Services under the direction and command of their respective superior officers are hereby granted authority to participate in countywide mutual aid, firemen's training schools, parades, meetings and municipal functions of the type

---

[3] Because Plaintiff's claims are based on the challenged ordinance, there is no dispute to its authenticity, and it is a matter of public record, this Court considers it for purposes of review of the motion to dismiss. *Guidotti*, 716 F.3d at 772 (when deciding a motion to dismiss, a court may consider the pleadings and attached exhibits, undisputedly authentic documents attached to the motion where the claims are based on those documents, and matters of public record.)

> customarily attended by and participated in by volunteer fire
> company members in accordance with the duties, responsibilities
> and obligations as set forth in the enabling legislation adopted by the
> Commonwealth of Pennsylvania, including, but not limited to, the
> Second Class Township Code, 53 P.S. § 65101 et seq., the
> Emergency Management Relief Act, and the Fire and Panic Act, 35
> P.S. § 1221 et seq.

Township Code of Ordinances, § 1-601.1 (2021).

## III.   PROCEDURAL HISTORY

Plaintiff, Sassamansville Fire Company No. 1, commenced the instant case on September 17, 2021. *See* ECF No. 1. Defendants removed the action to this Court on October 10, 2021, on the basis of federal question jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1343. ECF No. 1. On October 25, 2021, this Court ordered that Defendants contemplating filing a motion to dismiss must first discuss the contemplated motion with Plaintiff and provide Plaintiff an opportunity to cure any alleged deficiencies. ECF No. 2. On November 23, 2021, Plaintiff filed the Amended Complaint. ECF No. 8. Defendants filed motions to dismiss on December 14, 2021 and January 26, 2022. ECF Nos. 12, 23.  Plaintiff responded to the motions to dismiss on January 6, 2022 and February 23, 2022, ECF Nos. 18, 25, to which Defendants replied on January 14, 2022 and March 1, 2022, respectively, ECF Nos. 19, 26.

## IV.   STANDARD OF REVIEW

Defendants ask this Court to dismiss the Complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state 'a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility requires "more than a sheer possibility" that the defendant acted unlawfully. *Id.*

In this Circuit, courts must follow a three-step inquiry when evaluating a complaint: (1) "take note of the elements the plaintiff must plead to state a claim," (2) identify and disregard conclusory assertions because they "are not entitled to the assumption of truth," and (3) determine the well-pleaded factual allegations, assume their veracity, and then determine if they give rise to a plausible entitlement to relief. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 220–21 (3d Cir. 2011) (citations omitted); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). When deciding a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) (citation omitted). We consider only "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

## V.   DISCUSSION

We grant Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(6). The reasons for dismissal are addressed below.

### A.   Denial of Substantive Due Process Claim is Dismissed.

#### i.   Standard of Review

"The substantive component of the Due Process Clause limits what government may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities." *Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d

396, 399 (3d Cir. 2000). "The first step in any substantive due process review is to determine the standard of review." *Sammon v. New Jersey Bd. of Med. Examiners,* 66 F.3d 639, 643–44 (3d Cir. 1995).

In the Third Circuit, the courts apply slightly different standards when reviewing legislative acts and non-legislative acts for violations of substantive due process. *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000). "A legislative act will withstand substantive due process challenge if the government 'identifies a legitimate state interest that the legislature could rationally conclude was served by the statute,' although legislative acts that burden certain 'fundamental' rights may be subject to stricter scrutiny." *Id.* at 139 (citing *Alexander v. Whitman,* 114 F.3d 1392, 1403 (3d Cir. 1997)). To establish a violation of substantive due process by a non-legislative state action, "the plaintiff must prove (1) the particular interest at issue is protected by the Fourteenth Amendment, and (2) the government's deprivation of that protected interest shocks the conscience." *Connection Training Servs. v. City of Philadelphia*, 358 F. App'x 315, 319–20 (3d Cir. 2009) (citing *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008); *see also Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 426-27 (3d Cir. 2003).

"[L]egislative acts, generally laws and broad executive regulations, apply to large segments of society" whereas non-legislative acts "typically apply to one person or to a limited number of persons." *Nicholas*, 227 F.3d at 139 n.1 (quoting *Homar v. Gilbert*, 89 F.3d 1009, 1027 (3d Cir. 1996) (Alito, J., concurring in part and dissenting in part)). Additionally, an act is substantively legislative "if it involves either the enactment or amendment of legislation, such as policymaking or line-drawing decisions." *Ne. Land Dev., LLC v. City of Scranton*, 561 F. App'x 135, 138 (3d Cir. 2014) (citing *Acierno v. Cloutier*, 40 F.3d 597, 610 (3d Cir. 1994)) (determining that city council's action was legislative and not subject to procedural due process

9

protection). Even when an action is concentrated upon a single entity, other indications may

show that the action is substantively legislative in character. *Ne. Land Dev., LLC v. City of*

*Scranton*, 946 F. Supp. 2d 376, 386 (M.D. Pa. 2013) (citing *Acierno*, 40 F.3d at 611-12); *see LC*

*& S, Inc. v. Warren Co. Area Plan Comm'n*, 244 F.3d 601, 604 (7th Cir. 2001) ("It is utterly

commonplace for legislation to be incited by concern over one person or organization"). In

general, this Circuit applies the standard of review for legislative acts when reviewing township

ordinances.  *See, e.g.*, *Stern v. Halligan*, 158 F.3d 729, 731–32 (3d Cir. 1998) (analyzing

ordinance requiring connection to the municipal water system as a legislative act and affirming

dismissal); *Pace Res., Inc. v. Shrewsbury Twp.,* 808 F.2d 1023, 1025 (3d Cir. 1987) (affirming

dismissal after finding rational basis for zoning ordinance); *Rogin v. Bensalem Towp.*, 616 F.2d

680, 689–690 (3d Cir. 1980) (same).

        In the instant case, Defendants assert that the standard of review for legislative actions

should apply, arguing that the ordinance was substantively and procedurally a legislative action

because it amended the Township's Code. ECF No. 19 at 4–5; ECF No. 23 at 29–31.[4] We agree.

The ordinance challenged by Plaintiff was passed pursuant to the Second Class Township Code,

which authorizes the Board to "by ordinance make rules and regulations for the government of

fire companies" and "appropriate moneys" in order to "secure fire protection for the inhabitants

of the township." 53 P.S. §§ 66801, 66803, 66805 (1996); ECF No. 12 at 25; *see also Lacey*

*Park Volunteer Fire Co. No. 1 v. Bd. of Sup'rs of Warminster Twp., Bucks Cty.*, 365 A.2d 880,

881–82 (Pa. Cmmw. Ct. 1976) (holding that a township board of supervisors had authority to

---

        [4] Additionally, in Plaintiff's Amended Complaint, Plaintiff identifies the challenged
ordinance as a legislative action. Am. Compl. ¶¶ 124, 125. Plaintiff now argues that this question
"is an issue of law for the Court to decide outside the context of a motion to dismiss." ECF No.
18-1 at 30.

"organize an effective fire protection service" and suspend the firefighting activities of a fire company).

Pursuant to that authority, Defendant Township Board amended the Township Code to remove Plaintiff as a township-recognized fire company through an established legislative procedure. The ordinance affects not only Plaintiff, but affects "large segments" of the community, all Township residents, because it is through this ordinance that the Township "provide[s] fire protection within the township," 53 P.S. § 66801, and ensures that those providing firefighting services are adequately funded and equipped "in order to secure fire protection for the inhabitants," *id.* § 66803. The amendment to the Township Code is not akin to a lone permit or license refusal "that typically apply to one person or to a limited number of persons," but broadly implicates the services provided to all residents for their health and safety. Accordingly, we find that the issuance of the ordinance was a legislative action and, thus, we apply the standard of review for claims of violation of substantive due process respecting legislative actions to it.

### ii. Plaintiff failed to plead facts that would support a finding of arbitrary and irrational legislative action by Defendants.

Taking all of Plaintiff's facts as true and construing all allegations and reasonable inferences in the light most favorable to it, Plaintiff fails to plead sufficient facts to plausibly allege that Defendants' legislative action was arbitrary or irrational. As a starting point, we note that Plaintiff does not challenge Defendant Township Board's authority to add Plaintiff as a Township-recognized volunteer fire company in or around August 1995. Plaintiff also concedes that after December 2015 it "largely discontinued separate, formal responses to emergency calls" because it had transferred its fire house, fire equipment, and fire vehicles. Am. Compl. ¶¶ 34-35.

Notwithstanding those concessions, Plaintiff argues that the Township's removal of Plaintiff as a recognized volunteer fire company was not rationally related to any legitimate government interest for the following reasons: (1) the ordinance decreased the number of volunteer fire companies in the Township from two to one; (2) Defendant Gwynn, as the Township Manager, expressed concerns about the emergency response times in the Township; and (3) some members of the community supported maintaining two volunteer fire companies. *See* Am. Compl. ¶ 103; ECF No. 18-1 at 29.

In essence, Plaintiff argues that it would have been more rational for the Township to continue to recognize the fire company, but this dispute reflects a difference of opinion rather than a violation of constitutional rights. It is not this Court's place to make the legislative judgment of what action is in the best interest of the Township. Regardless of whether another approach was available to the Township, "the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Knight v. Tape, Inc.*, 935 F.2d 617, 627 (3d Cir. 1991) (quoting *Rogin*, 616 F.2d at 689). All that is required is a conceivable rational basis. *See Lindsey Coal Min. Co. v. Chater*, 90 F.3d 688, 694 (3d Cir. 1996) (citation omitted). Additionally, under substantive due process review, we may "hypothesize [a town's] motivations … to find a legitimate objective promoted by the provision under attack" because "it is constitutionally irrelevant whether this reasoning in fact underlay the legislative decision." *See Am. Exp. Travel Rel. Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 367 (3d Cir. 2012) (citations omitted).

We find no difficulty in articulating a rational basis for the contested action based on the allegations in the complaint. Plaintiff's own allegations provide a legitimate justification. Again,

Plaintiff concedes that it "largely discontinued separate, formal responses to emergency calls" after 2015 because it had transferred its fire house, fire equipment, and fire vehicles to the other fire company. Am. Compl. ¶¶ 34 -35. Determining that an entity with no fire equipment should no longer be recognized as a fire company and then amending the Township Code to reflect that judgment and alert residents of the new status quo is perfectly rational. The ordinance itself provides a plausible and rational justification: to update and clarify which entities are authorized to provide voluntary firefighting services, in this case, only entities that have firefighting equipment and provide formal responses to emergency calls. *See* Ordinance 21-06, Aug. 5, 2021, ECF No. 12 at 161–63. Because we find that Plaintiff fails to plausibly allege an arbitrary and irrational legislative action by Defendants, the substantive due process claim is dismissed.

### iii.   Plaintiff also lacks a fundamental constitutional right.

Even if we find that the amendment to the Township Code is a non-legislative action, and taking all of Plaintiff's facts as true and construing all allegations and reasonable inferences in the light most favorable to Plaintiff, Plaintiff's claim still fails. Plaintiff fails to plausibly plead a constitutional violation because it cannot show that it had a fundamental constitutional interest in continuing to serve as a Township-recognized volunteer fire company or continuing to receive government-funded benefits. *See* Am. Compl. ¶¶ 112, 115. The rights to be employed as a township-recognized fire company and to receive government-funded benefits are not fundamental rights protected by substantive due process. *See, e.g.*, *Nicholas,* 227 F.3d at 142–43 (holding that a tenured professor did not have fundamental rights to his public employment).

The Third Circuit has rejected substantive due process claims in similar cases regarding public employment.  In *Dondero*, a police officer, who could have only been terminated by cause, lost his public employment when a township re-organized the police department.

*Dondero v. Lower Milford Twp.*, 5 F.4th 355, 356, 362 n.1 (3d Cir. 2021). The Third Circuit found that the police officer could not establish a violation of substantive due process because individuals do not have a fundamental right to public employment. *Id.* at 362 n.1 (citing *Nicholas*, 227 F.3d at 142–43). In *Newark Cab Association*, New Jersey taxi drivers claimed that the City deprived them of their property rights in their medallions by allowing online ride share companies to operate and to operate without the same regulations imposed on taxis. *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 155 (3d Cir. 2018). The Third Circuit held that the taxi drivers' substantive due process rights were not violated because the taxi drivers' "alleged protected property interests—the loss of value of their medallions and the right to be the exclusive provider of ride-for-hire services in Newark—[did] not meet the standard of fundamental property interests under the Constitution." *Id.* at 155–56; *see also Connection Training Servs*, 358 F. App'x at 319–20 (holding that the trainee placement company's right of being recognized as an eligible training program and to receive funding from the city under the relevant ordinance did not constitute a fundamental property interest protected by substantive due process).

The same logic applies here. Because Plaintiff's interest to continue serving as a volunteer fire company is not fundamental under the Constitution, whether the challenged ordinance is legislative or non-legislative in character, Plaintiff's substantive due process claim fails.

### B.  Denial of Procedural Due Process Claim is Dismissed.

#### i.    Standard of Review

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of

the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). To state a

claim of deprivation of procedural due process rights, a plaintiff must allege that "the procedures

available to him did not provide due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225,

233–34 (3d Cir. 2006) (citing *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir.2000)) (internal

quotation marks omitted).  "An essential principle of due process is that a deprivation of life,

liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of

the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation and internal

quotations omitted). Nevertheless, a claim of violation of due process is not available against the

government for its legislative actions. *Rogin*, 616 F.2d at 693 (citing *Bi–Metallic Inv. Co. v. State

Bd. of Equalization of Colo.,* 239 U.S. 441 (1915)) (finding that a township board of supervisors'

passing of zoning amendments was a legislative action and not subject to procedural due process

requirements); *Ne. Land Dev., LLC v. City of Scranton*, 561 F. App'x 135, 137 (3d Cir. 2014).

> ii.  **Plaintiff lacks any basis for recovery for a claim for deprivation of procedural due process.**

Taking all of Plaintiff's facts as true and construing all allegations and reasonable

inferences in the light most favorable to it, Plaintiff fails to plead facts plausibly alleging that

Defendants deprived it of its procedural due process rights. Defendants assert that Plaintiff lacks

any basis for recovery for a claim for deprivation of procedural due process because the

amendment to the Township Code was a legislative action. ECF No. 12 at 32–33. Because we

find that the amendment to the Township Code is a legislative action, Plaintiff fails to state a

claim for deprivation of procedural due process, and we dismiss this claim.

> iii.  **Plaintiff failed to plausibly plead that it was deprived of procedural due process.**

Even if we find that the Board of Supervisor's amendment to the Township Code was a non-legislative action, Plaintiff's claim still fails. Plaintiff fails to plead facts that it was deprived of procedural due process. Where courts review conduct for compliance with procedural due process, "the requirements of due process are not reducible to a static formula, but rather are sensitive to the facts and circumstances of a given case." *Rogal v. Am. Broad. Companies, Inc.*, 74 F.3d 40, 44 (3d Cir. 1996). The "root requirement" of due process is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Cleveland Bd. of Educ.*, 470 U.S. at 542 (citation and internal quotations omitted). Additionally, "a state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error" made by a governing body such as a township board. *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 597 (3d Cir. 1995), *abrogated in part on other grounds by United Artists Theatre Cir., Inc. v. Twp. of Warrington, PA*, 316 F.3d 392 (3d Cir. 2003) (citations omitted). A plaintiff's failure to avail herself of the adequate judicial review process provided by the state does not suggest that those procedures are constitutionally inadequate. *Vurimindi v. City of Philadelphia*, 521 F. App'x 62, 65 (3d Cir. 2013); *Maple Properties, Inc.*, 151 F. App'x at 179 (holding that even if a plaintiff had property losses that implicate due process protection, the plaintiff fails to establish a due process violation in the absence of any evidence that the plaintiff sought or had been denied recourse to state courts); *McLaughlin v. Forty Fort Borough*, 64 F. Supp. 3d 631, 646–47 (M.D. Pa. 2014) (holding that if a plaintiff failed to avail herself of the procedural protection available under Pennsylvania law for appeals of land use decisions, she cannot sustain a federal due process claim).

In the instant case, Plaintiff asserts that it was deprived of its procedural due process rights for various reasons, chiefly, that the Township did not provide notice that a proposed amendment would be discussed at the July 1, 2021 meeting, that Defendants did not return Plaintiff's telephone calls and refused to discuss the proposed amendment with Plaintiff's counsel before the August 5, 2021 meeting, and that at the August 5, 2021 meeting, the Board of Supervisors mistreated Plaintiff's members and "did not address any of [Plaintiff's] issues at all, aside from offering" that the possibility of Plaintiff serving as a volunteer fire company could be discussed at a later date. Am. Compl. ¶¶ 41, 48-49, 54-55, 62, 86, 123-130.

We take all of Plaintiff's facts as true and construe all allegations and reasonable inferences in the light most favorable to Plaintiff. Still, Plaintiff fails to plead a plausible claim that it was deprived of procedural due process. Plaintiff does not claim that the August 5, 2021 meeting of the Board of Supervisors was conducted in secret, or that the Township did not provide notice of the August 5, 2021 meeting, or that the Township prevented Plaintiff from attending or participating at the meeting. To the contrary, Plaintiff concedes that it had notice, that its members attended the hearing, and that they provided comments and asked questions to the Township Board. *See* Am. Compl. ¶ 60, 63, 74–79. After taking comments, the Board voted to adopt the amendment to the Township Code at the August 2021 meeting, ratified its meeting minutes in its September 2021 meeting, and uploaded the minutes to the Township's website. *Id.* ¶¶ 90, 96. Plaintiff does not plead facts plausibly alleging a violation of due process.

Further, the state of Pennsylvania provides for due process protection against ordinances passed by township boards of supervisors by allowing an appeal of such ordinances to the Court of Common Pleas, *see* 53 P.S. § 66601(f), and Plaintiff has not pleaded that it was denied recourse through the state's available procedural protections. *See Vurimindi*, 521 F. App'x at 65;

*Maple Properties, Inc.*, 151 F. App'x at 179; *McLaughlin*, 64 F. Supp. 3d at 646–47. Plaintiff

fails to plead facts that plausibly allege a procedural due process claim. Accordingly, we dismiss

Plaintiff's claim of denial of procedural due process.

### C.  Denial of Equal Protection Claim is Dismissed.

#### i.    Standard of Review

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure

every person within the State's jurisdiction against intentional and arbitrary discrimination,

whether occasioned by express terms of a statute or by its improper execution through duly

constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quoting *Sioux City

Bridge Co. v. Dakota County,* 260 U.S. 441, 445 (1923)).   "[A] classification neither involving

fundamental rights nor proceeding along suspect lines ... cannot run afoul of the Equal Protection

Clause if there is a rational relationship between the disparity of treatment and some legitimate

governmental purpose." *Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 680 (2012) (quoting

*Heller v. Doe,* 509 U.S. 312, 319–320 (1993)). "[W]here 'ordinary commercial transactions' are

at issue, rational basis review requires deference to reasonable underlying legislative judgments."

*Armour*, 566 U.S. at 680 (citations omitted). "[R]egulations that have differing impacts on

various types of commercial entities, for example a city ordinance controlling advertising on

delivery vehicles, violate the equal protection clause only if they are not rationally related to a

legitimate state interest." *Price v. Cohen*, 715 F.2d 87, 92 (3d Cir. 1983) (citing *Ry. Express

Agency v. New York,* 336 U.S. 106 (1949)) (explaining that more deference is provided when the

classification is not based on race).

Equal protection claims may be brought by "a class of one", "where the plaintiff alleges

that she has been intentionally treated differently from others similarly situated and that there is

no rational basis for the difference in treatment." *Vill. of Willowbrook*, 528 U.S. at 564 (citing *Sioux City Bridge Co.,* 260 U.S. 441; *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.,* 488 U.S. 336 (1989)). To state a claim under "a class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill*, 455 F.3d at 239.

In the instant case, because we find, above, that Plaintiff does not have a fundamental constitutional right to continue serving as a Township-recognized volunteer fire company or to government-funded benefits, and because Plaintiff is not a member of a suspect class, we apply the rational basis standard of review to Plaintiff's claim for Defendants' violation of its right to equal protection.

### ii. Plaintiff fails to state a claim for an equal protection claim under "a class of one" theory.

Even taking all of Plaintiff's facts as true and construing all allegations and reasonable inferences in the light most favorable to Plaintiff, Plaintiff fails to plead facts plausibly alleging that Defendants violated its constitutional right to equal protection. Plaintiff states that Defendants' proposed reassessment of Plaintiff's property, withholding of information about the July 1, 2021 meeting, not providing Plaintiff with additional information prior to the August 2021 meeting, declining to engage with Plaintiff's members, and disdain for Plaintiff's members constitute intentionally different treatment under the Equal Protection clause. Am. Compl. ¶ 134. Further, Plaintiff argues that Defendants owed a duty to Plaintiff to treat it equally with New Hanover Township Volunteer Fire Company but failed to do so, *id.* ¶ 135, and that Defendants' actions are not "privileged or justified" and "are not rationally related to a legitimate governmental interest," *id.* ¶¶ 136–37.

19

As previously discussed, we find no difficulty in articulating a rational basis for the contested actions based on the allegations in the complaint. It is rational for the Board of Supervisors to remove Plaintiff as a Township-recognized volunteer fire company after it transferred its fire equipment to the other fire company and Plaintiff no longer participated in formal emergency response. Even construing all allegations and reasonable inferences in the light most favorable to it, Plaintiff does not plead sufficient facts to show that it is similarly situated, or to show that the amendment is not rationally related to a legitimate government interest. Accordingly, Plaintiff's claim fails.

### a. Plaintiff fails to plead facts to show that it is similarly situated with New Hanover Township Volunteer Fire Company No. 1.

Plaintiff fails to plead facts to show that it is similarly situated to New Hanover Township Volunteer Fire Company No. 1. "Persons are 'similarly situated' for equal protection purposes when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Plaintiff must plead facts regarding details that would indicate it is similarly situated with others who have been treated differently. *See Joey's Auto Repair & Body Shop v. Fayette Cty.*, 785 F. App'x 46, 49 (3d Cir. 2019) (affirming dismissal of an equal protection claim where a plaintiff identifies one other business that could be considered similarly situated but do not provide any further details that would indicate that business is a similarly situated entity with specific examples of how they are alike in all relevant aspects). Where differences between a plaintiff and others are significant, the courts do not find that the other entity is similarly situated with the plaintiff. *See, e.g.*, *Startzell*, 533 F.3d at 203; *S. Allegheny Pittsburgh Rest. Enterprises, LLC v. City of Pittsburgh*, 806 F. App'x 134, 143 (3d Cir. 2020) (affirming the district court's dismissal of a plaintiff's violation of equal protection claim where the plaintiff could not show other identified business

were similarly situated with the plaintiff); *Parker Ave., L.P. v. The City of Philadelphia*, 660 F.

App'x 156, 158–59 (3d Cir. 2016) (same); *Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 394

(3d Cir. 2010) (affirming summary judgment where plaintiff failed to show that it was similarly

situated with other entities).

In the instant case, Plaintiff states that it was treated differently from the other volunteer

fire company within the Township, the New Hanover Township Volunteer Fire Company No. 1,

without identifying how the two are similarly situated. Regardless of whether a merger occurred

among Plaintiff and the New Hanover Township Volunteer Fire Company No. 1, *id.* ¶¶ 21–22,

25–28, by December 2015, Plaintiff had "largely discontinued separate, formal responses to

emergency calls" because it had transferred its fire house, fire equipment, and fire vehicles, *id.* ¶¶

34-35.  Although Plaintiff previously operated as a volunteer fire company like the New Hanover

Township Volunteer Fire Company No. 1, Plaintiff concedes that it did not function as a

volunteer fire company in August 2021 when the Board of Supervisors amended the Township

Code. Plaintiff does not plead any other facts that show why or how the New Hanover Township

Volunteer Fire Company No. 1 is similarly situated to Plaintiff.

### b.  Plaintiff fails to show that the amendment to the Township Code is not rationally related to a legitimate government interest.

"Rational basis review is a very deferential standard. It is met 'if there is any reasonably

conceivable state of facts that could provide a rational basis for the differing treatment." *Newark*

*Cab Ass'n v. City of Newark*, 901 F.3d 146, 156–59 (3d Cir. 2018) (quoting *United States v.*

*Walker*, 473 F.3d 71, 77 (3d Cir. 2007)). "[R]ational-basis review in equal protection analysis is

not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Id.*

(quoting *Heller*, 509 U.S. at 319) (internal quotation marks omitted). Equal protection is satisfied

if "there is a plausible policy reason for the classification, the legislative facts on which the

classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Id.* (quoting *Fitzgerald v. Racing Ass'n of Cent. Iowa*, 539 U.S. 103, 107 (2003)) (internal quotation marks omitted).

Plaintiff must meet a very high standard to allege that an action lacked a conceivable rational basis. Plaintiff does not meet that standard. As previously stated, this Court finds no difficulty in articulating a rational basis. Plaintiff's own allegations and the ordinance itself provide a plausible rational basis for the Township's action. In applying rational basis review, we defer to the Board of Supervisors' "reasonable underlying legislative judgments." Accordingly, we dismiss Plaintiff's equal protection claim.

### D.   Violation of 42 U.S.C. § 1983, *Monell* Claim, is Dismissed.

#### i.      Standard of Review

"Local governing bodies . . . can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (footnote omitted). To plead a local government liability claim, a plaintiff must allege that the local government policy or custom was unconstitutional and that it inflicted an injury on plaintiff. *Id.* at 690, 694. "Policy is made when a decisionmaker possess[ing] final authority to establish [] [the] policy with respect to the action issues an official proclamation, policy, or edict."  *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to

constitute law." *Est. of Roman*, 914 F.3d at 798 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

> ii.     **Plaintiff fails to plead facts to show that Defendants' actions give rise to a constitutional violation.**

Plaintiff asserts that Defendants developed and maintained policies and customs that deprived Plaintiff of its constitutional rights causing a foreseeable harm to Plaintiff. *See* Am. Compl. ¶¶ 138–48. Plaintiff also asserts that Defendants failed to engage Plaintiff before approving the amendment to the Township Code, instead resorted to its "own self-serving policies and procedures." *Id.* ¶ 145. Defendants respond that Plaintiff fails to state a *Monell* claim because it cannot establish a violation of its constitutional rights by Defendants or any employee or elected official. ECF No. 12 at 42–43. We agree.

Because we find, above, that Plaintiff fails to plausibly plead any violation of its constitutional rights, we find that Plaintiff fails to state a *Monell* claim. "[T]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution." *Monell*, 436 U.S. at 690. An ordinance may constitute a policy which gives rise to a local government liability if it results in a plaintiff's suffering, but the plaintiff must still satisfy *Monell* elements in order to prevail. *Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009) (citing *Doby v. DeCrescenzo,* 171 F.3d 858, 868 (3d Cir.1999)). Plaintiff fails to plead facts plausibly alleging that it was deprived of any constitutional rights due to Defendants' actions.  Accordingly, Plaintiff's *Monell* claim is dismissed.

> **E.  Violation of 42 U.S.C. § 1983 State-Created Danger Claim is Dismissed.**

> i.     **Standard of Review**

The state-created danger theory is "a way to establish a constitutional violation in suits brought under § 1983" and such "liability may attach where the state acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996)) (emphasis in original). To prevail on a claim under state-created danger doctrine, a plaintiff must plead sufficient facts to show:

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cty.*, 443 F.3d 276, 280–82 (3d Cir. 2006) (citation omitted).

To state a state-created danger claim, a plaintiff must first plausibly plead that the harm she suffered was a foreseeable and fairly direct consequence of the defendant's action. *Id.* "To satisfy the 'foreseeable' prong, the plaintiff must 'allege an awareness on the part of the state actors that rises to level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm.'" *Quinn v. Badolato*, 709 F. App'x 126, 129–30 (3d Cir. 2017) (quoting *Phillips*, 515 F.3d at 238). "To satisfy the "fairly direct" prong, "the plaintiff must plausibly allege that state officials' actions precipitated or were the catalyst for the harm for which the plaintiff brings suit.'" *Id.* (quoting *Henry v. City of Erie*, 728 F.3d 275, 285 (3d Cir. 2013)). "[A]lleging that a state actor's actions 'set into motion a chain of events that result[ed] in harm' is insufficient." *Id.* (quoting *Henry*, 728 F.3d at 283).

In the instant case, taking all of Plaintiff's facts as true and construing all allegations and reasonable inferences in the light most favorable to Plaintiff, we find that Plaintiff fails to plead facts that can plausibly satisfy the first element of a state-created danger claim, we need not consider the remaining elements.

### ii. Plaintiff fails to plead facts to show "foreseeable and direct" harm.

Plaintiff fails to plead facts to show that it suffered any foreseeable and direct harm. Plaintiff asserts that it is entitled to relief for its claim of state-created danger because "the Township's limited resources have caused prolonged emergency response times," the Defendants "used their authority in a way that further reduced the number of potential volunteer emergency responders," and "terminating [Plaintiff's] recognition as a Township-approved volunteer fire company, deterred [Plaintiff's] members from providing emergency response services to members of the Township." Am. Compl. ¶¶ 151-53. Plaintiff further asserts that "Defendants used their authority to exacerbate a threat to public safety." *Id.* ¶ 154. Defendants respond in multiple ways: Plaintiff fails to plead any actual injury, Defendants' action of removing Plaintiff as a Township-recognized volunteer fire company does not shock the conscience, Plaintiff is not a foreseeable victim of any of Defendants' actions, and Plaintiff fails to demonstrate that the Township created a danger to make the Township residents more vulnerable to danger. ECF No. 12 at 33–35; ECF No. 23 at 33–35.

Even taking all of Plaintiff's facts as true and construing all allegations and reasonable inferences in the light most favorable to it, Plaintiff fails to show that any harm would be a direct and foreseeable result of Defendants' amendment of the Township Code. State actors, including local governments, "are not liable every time their actions set into motion a chain of events that result in harm." *Henry v. City of Erie*, 728 F.3d at 282–84. That is because any

> legislative decision that has an incremental impact on the probability that death
> will result in any given situation—such as setting the speed limit at 55–miles–
> per–hour instead of 45—cannot be characterized as state action depriving a
> person of life just because it may set in motion a chain of events that ultimately
> leads to the random death of an innocent bystander.

*Id.* (quoting *Martinez v. State of California,* 444 U.S. 277, 281 (1980)). Because the future harm that Plaintiff describes "relies on a speculative and attenuated chain of causation that is unlikely to constitute 'foreseeable and direct' harm," it does not satisfy the first step of the test for a state-created danger claim. *Id.; see also Murray v. City of Philadelphia*, 481 F. Supp. 3d 461, 474–75 (E.D. Pa. 2020) (affirming dismissal of a state-created danger claim where plaintiffs alleged that the City's dissolution of encampment endangered its residents' welfare by putting them in danger of sleeping outside or in dangerous and unsanitary conditions at shelters). Again, Plaintiff's claim is based on a difference of opinion on the best interests of the Township, but a difference of opinion *alone* is not enough to plausibly plead a foreseeable and fairly direct harm caused by the Township. Accordingly, Plaintiff's claim of violation of § 1983 under state-created danger theory is dismissed.

## VI.   CONCLUSION

For the foregoing reasons, the Court GRANTS the motions to dismiss. The Amended Complaint is DISMISSED WITHOUT PREJUDICE. Plaintiff has 21 days to file a second amended complaint. If no second amended complaint is filed within 21 days, the Complaint will be DISMISSED WITH PREJUDICE. An appropriate order follows.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**