**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SASSAMANSVILLE FIRE COMPANY NO. 1,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MARIE LIVELSBERGER, ET AL.,** | : | |
| *Defendants.* | : | **NO.  21-cv-4648** |
| | : | |

**<u>MEMORANDUM</u>**

**KENNEY, J.**                                                        **May 18, 2022**

## I.    INTRODUCTION

Plaintiff's Second Amended Complaint (ECF No. 30) reasserts three of the five federal

claims set forth in its First Amended Complaint (ECF No. 8) and adds two new state law

claims.[1] In large part, the factual allegations set forth in Plaintiff's Second Amended Complaint

mirror those already considered by this Court in relation to Plaintiff's previously-dismissed First

Amended Complaint. *See generally* ECF Nos. 8, 30. Yet, even though many of the underlying

facts alleged are the same, Plaintiff has restructured its arguments in an attempt to cure the

defects this Court found with Plaintiff's First Amended Complaint with respect to its federal

claims.

More specifically, in its Second Amended Complaint, Plaintiff, Sassamansville Fire

Company No. 1 ("Plaintiff" or "SFC") alleges that Defendants New Hanover Township (the

---

[1] Specifically, Plaintiff brings three federal claims pursuant to 42 U.S.C. § 1983—denial of
substantive due process (Count I), denial of equal protection (Count II), and *Monell* liability
(Count III)—as well as two state law claims—tortious interference with contractual relationships
(Count IV) and commercial disparagement (Count V).

"Township"), the individual members of the New Hanover Township Board of Supervisors, Kurt Zebrowski, Marie Livelsberger, Boone Flint, William Ross Snook, and Gregory Maskrey (collectively the "Board of Supervisors" or the "Supervisor Defendants"), and the Manager of New Hanover Township, Jaime Gwynn ("Defendant Gwynn"), (collectively "Defendants") violated it and its members constitutional rights by "taking its property (firefighting assets) without due process and depriving it of its right to [e]qual [p]rotection." ECF No. 30 ¶ 1. Plaintiff claims that, in 2021, when the Board of Supervisors passed an amendment (the "Amendment") to the Township of New Hanover Code of Ordinances (the "Township Code") terminating Plaintiff's recognition as an authorized volunteer fire company in New Hanover Township it "br[ought] to light a years-long scheme to deprive SFC of its property and assets" and thus, unconstitutionally "deprive[d] SFC access to or claim of right to its firefighting assets" ECF No. 30 ¶¶ 3, 5.

Yet, Plaintiff cannot cure the defects of his constitutional claims merely by conflating the actions of non-parties that occurred well outside the relevant statute of limitations with the actions actually at issue in this case. While Plaintiff has added supplemental allegations in its Second Amended Complaint regarding what it characterizes as the wrongdoing by several third-parties (not present in this lawsuit nor, at the time the Amendment was passed, employed by the Township or serving on the Township Board of Supervisors) in relation to the transfer of SFC's firefighting assets in 2014, Plaintiff has not pled facts that demonstrate that 2014 transfer of assets or the persons and entities involved in negotiating and executing it were connected, in any legally pertinent way, to the Board of Supervisor's years-later decision to amend the Township Code to delete SFC's Township-recognized status. As discussed in more detail below, this Court finds that these additional allegations about prior wrongdoing by largely irrelevant third parties

have no bearing on the Court's determination that there exists a straightforward conceivable rational basis tied to a legitimate government interest for the Board of Supervisors decision to delete SFC as a Township recognized fire company in 2021. *See* ECF No. 27 at 8–14, 18–21.

Presently before the Court is Plaintiff's Second Amended Complaint (ECF No. 30), Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 32), Plaintiff's Response to Defendant's Motion to Dismiss (ECF No. 36), and Defendants' Reply (ECF No. 37). Upon careful consideration of the parties' submissions and for the reasons provided below, this Court finds that Plaintiff has failed to sufficiently state any of its federal claims. Further, using its discretion, this Court also declines to exercise supplemental jurisdiction over the remaining state law claims.

Accordingly, the Court will **GRANT** Plaintiff's Motion to Dismiss (ECF No. 32), dismissing the federal claims with prejudice and the state law claims without prejudice.

## II.    BACKGROUND

A summary of the facts, as alleged by Plaintiff in the Second Amended Complaint follows.[2]

Upon its creation in or around 1949, SFC began providing, *inter alia*, volunteer fire and rescue services, community services, and recreational events for the benefits of its members and the residents of the Township. ECF No. 30 ¶¶ 20–21.

---

[2] The Court accepts all factual allegations as true and construes all allegations and reasonable inferences in the light most favorable to the nonmoving party. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) (citation omitted). In deciding a motion to dismiss, this Court considers the pleadings and attached exhibits, undisputedly authentic documents attached to the motion where the claims are based on those documents, and matters of public record. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

On or about August 14, 1995, the Board of Supervisors enacted Section 1-601 of the Township Code, which granted SFC the "authority to participate in Countywide mutual aid, firemen's training schools, parades, meetings and municipal functions of the type customarily attended by and participated in by a volunteer fire company member in accordance with the duties, responsibilities and obligations as set forth in the enabling legislation adopted by the Commonwealth of Pennsylvania including, but not limited to, the Second Class Township Code, 53 P.S. §65101 *et seq.*, the Emergency Management Relief Act and the Fire and Panic Act, 35 P.S. §1221 *et seq.*" *Id.* ¶ 23.

In or around June of 2010, the Township commissioned Volunteer Firemen's Insurance Services, Inc. d/b/a VFIS Education, Training and Consulting ("VFIS") to prepare a Fire Services Assessment for the Township to analyze the management, operations, resources, and facilities of SFC and New Hanover Township Volunteer Fire Company No. 1 ("New Hanover Fire"). *Id.* ¶ 24; *see also Id.* Exhibit A.

After conducting an investigation, in October 2010, VFIS produced an assessment (the "Fire Services Assessment"), in which it laid out an analysis of the two fire companies' collective operations and resources. ECF No. 30 ¶ 26; *Id.* Exhibit A. The Fire Services Assessment stated, *inter alia*, that the "overall approach training and development of standard operating guidelines" of the two fire companies, "needs refinement to truly be effective in the long term." ECF No. 30 Exhibit A at 26. The Fire Services Assessment also noted that "the most significant issue observed…was the operational struggle between the two companies [SFC and New Hanover Fire]" and that "operational conflicts between the two fire companies…strained relations and as a result have had a reported negative impact on staffing and response times." *Id.* Further, VFIS found that "SFC's physical station was located in an area that made it more

difficult to respond to calls in certain areas of the Township as quickly as New Hanover Fire" but that there was "nothing wrong with this." *Id.* ¶ 32. Ultimately, the Fire Services Assessment provided twenty-one separate recommendations, including Recommendation 10-02, which recommended "reorganizing the two (2) fire companies as a single township-wide service system with one set of members served from two (2) stations." *Id.*  ¶¶ 35, 37. VFIS also recommended a "comprehensive approach to the recruitment and retention of an adequate force" noting that "people are the most valuable resource to any emergency agency, volunteer or career." ECF No. 30 ¶ 38.

Subsequently, on August 13, 2012, VFIS's Recommendation 10-02 was adopted by the then-acting Township Board of Supervisors through Resolution 18-12. *Id.* ¶ 41; *Id.* Exhibit B. Resolution 18-12 also "authorized the Township's solicitor to 'prepare and advertise an Ordinance… setting forth the rules and regulations for the government of the New Hanover Township Fire and Rescue Service System, to be publically [sic] heard at their September [2012] Board of Supervisors meeting[.]' " *Id.* Exhibit B. In the months that followed—from August 2012 to November 2012—SFC and New Hanover Fire met to discuss possible consolidation, at the request of the Township. ECF No. 30 ¶ 43.

On November 12, 2012, another Board of Supervisors Meeting was held, and the minutes from that meeting show that, at that time, SFC did not agree to a consolidation of the two fire companies. *Id.* at 44; *Id.* Exhibit C. "Hearing concerns from the community, the Board of Supervisors agreed to allow SFC to retain its recognition as a separate mutual aid volunteer fire company, under the caveat that it would not receive funding from the Township." ECF No. 30 ¶ 45. The Board of Supervisors then passed Resolution 26-12, which designated "New Hanover Volunteer as the Township's primary volunteer fire company and SFC as the recognized mutual

aid volunteer fire company." *Id.* ¶ 48; *Id.* Exhibit D. According to Plaintiff, these facts show that SFC was coerced into consolidating its resources with New Hanover Volunteer through the withholding of SFC's funding. *Id.* ¶ 49.

In or about May 2013, SFC revisited consolidating with New Hanover Fire on the condition that SFC would retain its Township recognition. ECF No. 30 ¶ 50. In a letter dated August 14, 2013, SFC's Official Representative, Joshua Stouch, and FCS's President, William Pasqueal, issued a notice on behalf of SFC's members that stated SFC had accepted the proposal to merge with New Hanover Fire to form New Hanover Volunteer Fire and Rescue Services ("New Hanover Volunteer"). *Id.* ¶¶ 51, 53; ECF No. 30 Exhibit E. This letter is not countersigned by New Hanover Fire. ECF No. 30 ¶ 54.

In January 2014, former SFC Fire Chief and then-New Hanover Fire Chief, Philip Agliano was elected Township Supervisor. *Id.* ¶ 54. According to Plaintiff, several years earlier, Mr. Agliano had resigned from his role as fire chief of SFC after SFC had restricted what it determined to be excessive spending by Mr. Agliano. *Id.* ¶ 56. Plaintiff asserts that once elected Township Supervisor, Mr. Agliano "used his government powers to initiate the scheme to benefit New Hanover Fire to SFC's detriment." ECF 30 ¶ 57.

More specifically, Plaintiff states that the scheme consisted of:

a) [C]oercing SFC to join New Hanover Volunteer, a fictitious entity formed by and under the control of New Hanover Fire;
b) inducing SFC to transfer SFC's firefighting assets to New Hanover Volunteer under the pretense that SFC would either be part of New Hanover Volunteer and/or would retain its independent Township-recognition;
c) then, after acquiring SFC's assets, excluding most of SFC's members from joining New Hanover Volunteer; and
d) then using New Hanover Fire's influence and dual government powers to terminate SFC's recognition altogether.

*Id.* ¶ 57.

Plaintiff asserts that in February 2014, New Hanover Fire's attorney, John Muir, Esq. ("Attorney Muir"), attended an SFC meeting that was held to discuss SFC joining New Hanover Volunteer in order to advocate for SFC joining New Hanover Volunteer and to offer his legal services. *Id.* ¶¶ 59–60.

Attorney Muir, told SFC at the February 2014 meeting that he "was engaged by both New Hanover Fire and SFC to facilitate the consolidation…[and] recommended that the two fire companies use him to facilitate the transfer of assets without recommending that either company consult with independent counsel[,]… assur[ing] both fire companies that he 'ha[d] no dog in the fight' and would be able to fairly represent the interests of both fire companies." *Id.* ¶ 61.

The then-New Hanover Police Sergeant, Mr. William Moyer, was also in attendance at the February 2014 meeting, and communicated to SFC that New Hanover Fire did not want any money from SFC and that New Hanover Volunteer's charter would recognize both fire companies independently. *Id.* ¶ 61.

According to Plaintiff, based on the representations from Attorney Muir and Mr. Moyer, SFC then voted to join New Hanover Volunteer. *Id.* ¶ 63. Plaintiff also alleges that at all times material to this matter, Mr. Moyer was an employee of the Township. *Id.* ¶ 62.

Subsequently, a letter dated "Fall 2014" written on New Hanover Volunteer letterhead was sent to all SFC members (the "Fall 2014 letter"). *Id.* ¶ 64; *Id.* Exhibit G. The Fall 2014 Letter is signed by "Brian Lee," who identifies himself as the President of New Hanover Volunteer and provides that "[SFC] and [New Hanover Fire] have come together to form [New Hanover Volunteer]." *Id.* ¶¶ 65–66.

On October 24, 2014, representing himself as counsel for SFC,  Attorney Muir filed a "Petition of [SFC] to Transfer its Non-Real Estate Firefighting Assets and Associated Equipment to [New Hanover Volunteer.]" (the "Petition to Transfer") in the Montgomery County Court of Common Pleas Orphans' Court Division (*see* docket number 2014-X3698). ECF No. 30 ¶¶ 68–69; *Id.* Exhibit H. The Petition to Transfer states that "[t]he intent of the two (2) volunteer fire companies that will comprise New Hanover Fire Company is that Petitioner will contribute its non-real estate firefighting assets and associated fire equipment to New Hanover Fire Company and New Hanover Fire Company will then take the necessary steps to register a fictitious name to do business as new [New Hanover Volunteer.]" ECF No. 30 Exhibit H at 140–141.

The Petition to Transfer includes, as an attachment, an SFC Resolution (the "Resolution"), which provides that "[a]s a result of significant negotiations between the two volunteer fire companies [New Hanover Fire] and [SFC,] the members of the fire companies and the elected officials agreed to work together…to consolidate and establish a combined volunteer fire department." ECF No. 30 Exhibit H at 148. The SFC Resolution further provides that New Hanover Fire has "agreed to take the necessary steps to rename the existing fire company, [New Hanover Fire,] to be known as [New Hanover Volunteer]," and that "[SFC] desires to become part of the newly established [New Hanover Volunteer] by virtue of transferring its firefighting equipment, fire apparatus and other firefighting personal property to [New Hanover Volunteer.]" *Id.* According to Plaintiff, the language of the Petition to Transfer materially deviates from the language of SFC's Resolution in that it provides SFC agreed to transfer its assets to New Hanover Fire rather than New Hanover Volunteer.

*Id*. ¶ 77–79. A plain reading of both documents submitted by Plaintiff shows that the Petition to Transfer and the SFC Resolution state that New Hanover Fire will be renamed and known as New Hanover Volunteer. *See* ECF No. 30 Exhibit H at 140–41, 148.

Aside from the Petition to Transfer, no formal merger documents were ever prepared, executed, or submitted to the Pennsylvania Department of State Bureau of Corporations and Charitable Organizations ("DOS"), as is required to formalize any corporate merger of this type in the Commonwealth of Pennsylvania. *Id.* ¶ 79.

On November 7, 2014, SFC, as landlord, entered into a lease agreement with New Hanover Volunteer, as tenant, (the "2014 Lease") to lease its fire station to New Hanover Volunteer. ECF No. 30 ¶ 80; *see also* ECF No. 30 Exhibit I. In the 2014 Lease, SFC was identified as a separate, distinct entity from New Hanover Volunteer. ECF No. 30 ¶ 81.

On November 18, 2014, the Montgomery County Court of Common Pleas Orphans' Court entered a Decree approving the Petition to Transfer. *Id.* ¶ 82.

After the Decree was approved, the relationship between SFC and New Hanover Fire continued to deteriorate, and frequent and volatile conflicts arose between SFC and New Hanover Fire. *Id.* ¶ 83.

Despite the rising tensions, SFC continued to respond to the Township's requests for emergency and volunteer response services. *Id.* ¶ 84. In or around December 2015, however, New Hanover Fire precluded SFC from continuing to respond to emergency services as it had acquired SFC's assets via the Petition to Transfer and SFC's fire station via the 2014 Lease. *Id.* ¶ 85.

In 2017, in relation to the operational issues that were pointed out in the Fire Services Assessment, as well as the preclusion of SFC from participating in New Hanover Volunteer, litigation arose between SFC and New Hanover Fire (the "2017 Litigation"), which resulted in a settlement agreement between the parties that was executed on December 6, 2020. *Id.* ¶¶ 86, 88. Adversely to SFC, Attorney Muir represented New Hanover Fire and New Hanover Volunteer in the 2017 Litigation, which Plaintiff asserts was "in breach of his ethical obligations and the Pennsylvania Rules of Professional Conduct." *Id.* ¶ 88.

On June 28, 2021, the Supervisor Defendants held a monthly meeting during which Plaintiff alleges, upon information and belief, that former Township Supervisor Mr. Agliano, and the then New Hanover Fire Deputy Chief, coached New Hanover Fire Chief, Mr. Moyer, and President, Matthew Barnes, as to how to effectively petition the Supervisor Defendants to terminate SFC's Township recognition. ECF 30 ¶ 94.

In a June 28, 2021 meeting, the Board of Supervisors discussed whether Plaintiff still qualifies as a non-profit company for tax purposes as it was "no longer providing any financial support to [New Hanover Volunteer]" and noted that New Hanover Volunteer had requested to be recognized as the only fire and rescue company in the Township. ECF No. 30 ¶¶ 94, 99. Defendant Township Manager Jamie Gwynn stated that at the Board's July meeting, it would consider amending the Township Fire Company Ordinance to reflect this request. *Id.*

Before the next month's meeting, on July 1, 2021, the Board of Supervisors posted the agenda online, but the agenda did not mention potential amendment of the Township Fire Company Ordinance. *Id.* ¶¶ 105–06.  Plaintiff asserts that the Board of

Supervisors intentionally "left [the discussion of the potential amendment] off the agenda" to deprive Plaintiff of notice. *Id.* ¶ 108.  Additionally, the June 28, 2021 meeting minutes were not posted before the July 1, 2021 meeting. *Id.* ¶ 109. Lacking notice, none of Plaintiff's members attended the July 1, 2021 meeting. *Id.* ¶ 111.

In the July 1, 2021 meeting, the Board authorized the solicitor to advertise the proposed removal of SFC from the Township Fire Company Ordinance and prepare the proposed change for consideration at the Board's August meeting.  ECF No. 30 ¶ 112.

On or about July 22, 2021, the Board posted a classified advertisement on the Township website noticing a public hearing to consider an amendment to delete "Sassamansville Fire Company and Sassamansville Firemen's Relief Association from Section 1-601 of the Township Code" (the "Proposed Amendment"). *Id.* ¶ 117; ECF No. 30 Exhibit P.  Plaintiff further asserts that Defendants did not return Plaintiff's telephone calls and refused to "engage in <u>any</u> good faith communication with [Plaintiff's] counsel as to the nature of and need for" the Proposed Amendment before the August meeting. ECF No. 30 ¶ 119 (emphasis in original).

The Board of Supervisors posted the agenda for the August meeting on its website. *Id.* ¶ 120; ECF No. 30 Exhibit Q. At that meeting, on August 5, 2021, the Board behaved "strikingly more cooperative and pleasant" with Township residents and members of New Hanover Fire "when compared to their treatment of the Township residents that were in attendance as SFC members." ECF No. 30 ¶ 124.  For "each and every topic on the agenda," the Board of Supervisors "pleasantly accepted questions from the public-at-large, addressed such questions, and participated in meaningful

discussions" and "did not interrupt the speaker to demand their name and address." *Id.* ¶¶ 126–127.

When the Board of Supervisors began to consider the Proposed Amendment, Plaintiff's counsel "sought clarification on the nature of the Proposed Amendment" but Defendant Gwynn responded that "this is public comment" and insisted that "members of the Township be heard first." *Id.* ¶¶ 129–131. Thereafter, when Plaintiff's members stood to speak, Defendant Gwynn would "cut them off and demand that they 'state their name and address.'" *Id.* ¶¶ 134.  Plaintiff's members expressed their confusion and concern, informed "the Township Supervisors that they did not execute or file with the DOS a 'Statement of Merger,' " asked questions, and "vocalized that they did not want or need any Township funding but, rather, just sought to preserve their recognition." *Id.* ¶¶ 133–137. Additionally, Plaintiff's members and several Township residents stated "their support for maintaining two (2) volunteer fire companies instead of one, and [said that] Township's residents would only benefit from additional volunteer resources." ECF No. 30 ¶ 137. The Board of Supervisors did not interrupt, Matt Barnes, the only person who spoke in favor of the Proposed Amendment and did not ask his name or address. *Id.* ¶¶ 139–141.

At the conclusion of the public hearing, the Board of Supervisors did not address any of Plaintiff's issues at all, aside from offering that the possibility of Plaintiff serving as a volunteer fire company could be discussed at a later date. *Id.* ¶ 145.

The Board of Supervisors subsequently voted unanimously to delete Sassamansville Fire Company and Sassamansville Firemen's Relief Association from Section 1-601 of the Township Code. *Id.* ¶ 149.

After the August 2021 Board of Supervisors meeting, SFC reached out to several neighboring municipalities to recognize it as a volunteer fire company. ECF No. 30 ¶ 170. Plaintiff asserts that "[s]everal of such municipalities responded to SFC that they were 'told by Mr. Moyer that they could not recognize SFC unless they wanted to be embroiled in litigation' and that Mr. Moyer had disparaged SFC in such a way that these municipalities wanted to nothing to do with SFC." *Id.* ¶ 171.

Additionally, in December 2021, the Supervisor Defendants advertised a notice proposing to add [New Hanover Fire] as the volunteer firefighters and fire police authorized by the Township and to delete all references to [New Hanover Volunteer] (the "Notice"). *Id.* ¶ 179;ECF No. 30 Exhibit U. At a January 3, 2022 meeting, the Supervisor Defendants met privately for an executive session with the Township solicitor for approximately 20 minutes. *Id.* ¶ 180. Subsequently, the Supervisor Defendants motioned to approve the amendment as set forth in the Notice and opened up the meeting for public comment. *Id.* ¶ 181. At that time, in responding to questions about the proposed amendment, the Supervisor Defendants explained it was proposed for "clean up purposes." *Id.* The Board of Supervisors then voted unanimously to approve the amendment (the "January 2022 Amendment"). *Id.* ¶ 182.

Plaintiff also alleges that, upon information and belief, in February 2022, New Hanover Fire applied for grant monies through the Office of State Fire Commissioner and listed both New Hanover Fire's and SFC's EIN numbers, and that these grants were approved and the monies were released to the Township Defendants for the purposes of disbursing them to New Hanover Fire. ECF No. 30 ¶¶ 184–186. According to Plaintiff the Township Defendants then disbursed the full amount of grant money, $30,0000 to

New Hanover Fire, with the knowledge that OSFC had approved the grant monies to two fire companies. *Id*. ¶ 188.

## III.    PROCEDURAL HISTORY

Plaintiff, SFC, commenced the instant case on September 17, 2021. *See* ECF No. 1. Defendants removed the action to this Court on October 10, 2021, on the basis of federal question jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1343. ECF No. 1. On October 25, 2021, this Court ordered that Defendants contemplating filing a motion to dismiss must first discuss the contemplated motion with Plaintiff and provide Plaintiff an opportunity to cure any alleged deficiencies. ECF No. 2. On November 23, 2021, Plaintiff filed the First Amended Complaint. ECF No. 8. Defendants filed Motions to Dismiss on December 14, 2021 and January 26, 2022. ECF Nos. 12, 23.  Plaintiff responded to the Motions to Dismiss on January 6, 2022 and February 23, 2022, ECF Nos. 18, 25, to which Defendants replied on January 14, 2022 and March 1, 2022 (respectively, ECF Nos. 19, 26). On March 25, 2022, this Court granted Defendants' Motions to Dismiss Plaintiff's First Amended Complaint without prejudice. ECF Nos. 27, 28.

Plaintiff filed a Second Amended Complaint on April 14, 2022, and on April 20, 2022, Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint in its entirety. ECF Nos. 30, 32. On May 4, 2022, Plaintiffs submitted a Response in Opposition to Defendants' Motion to Dismiss, and on May 12, 2022, Defendants filed a Reply. ECF Nos. 36, 37.

## IV.    STANDARD OF REVIEW

Defendants ask this Court to dismiss the Complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a

complaint must "contain sufficient factual matter, accepted as true, to state 'a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires "more than a sheer possibility" that the defendant acted unlawfully. *Id.*

In this Circuit, courts must follow a three-step inquiry when evaluating a complaint: (1) "take note of the elements the plaintiff must plead to state a claim," (2) identify and disregard conclusory assertions because they "are not entitled to the assumption of truth," and (3) determine the well-pleaded factual allegations, assume their veracity, and then determine if they give rise to a plausible entitlement to relief. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 220–21 (3d Cir. 2011) (citations omitted); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). When deciding a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) (citation omitted). We consider only "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

## V.   DISCUSSION

We grant Defendants' Motion to Dismiss (ECF No. 32) under Federal Rules of Civil Procedure 12(b)(6). The reasons for dismissal are addressed below.

### A.  Plaintiff's Denial of Substantive Due Process Claim (Count I) is Dismissed.

#### i.   Standard of Review

"The substantive component of the Due Process Clause limits what government may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities." *Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d 396, 399 (3d Cir. 2000). "The first step in any substantive due process review is to determine the standard of review." *Sammon v. New Jersey Bd. of Med. Examiners,* 66 F.3d 639, 643–44 (3d Cir. 1995).

In the Third Circuit, the courts apply slightly different standards when reviewing legislative acts and non-legislative acts for violations of substantive due process. *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000). "A legislative act will withstand substantive due process challenge if the government 'identifies a legitimate state interest that the legislature could rationally conclude was served by the statute,' although legislative acts that burden certain 'fundamental' rights may be subject to stricter scrutiny." *Id.* at 139 (citing *Alexander v. Whitman,* 114 F.3d 1392, 1403 (3d Cir. 1997)). To establish a violation of substantive due process by a non-legislative state action, "the plaintiff must prove (1) the particular interest at issue is protected by the Fourteenth Amendment, and (2) the government's deprivation of that protected interest shocks the conscience." *Connection Training Servs. v. City of Philadelphia*, 358 F. App'x 315, 319–20 (3d Cir. 2009) (citing *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008); *see also Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 426-27 (3d Cir. 2003).

In this Court's prior decision dismissing the First Amended Complaint, this Court found that the standard of review for legislative actions should apply to action challenged here, on the grounds that the adoption of the Amendment was substantively and procedurally a legislative action because it amended the Township's Code. ECF No. 19 at 4–5; ECF No. 23 at 29–31. For

the same reasons, this Court, again determines the act in question is a legislative action. *See* ECF No. 27 at 10–11.

> ii.    **Plaintiff failed to plead facts that would support a finding of arbitrary and irrational legislative action by Defendants.**

Previously, in relation to Plaintiff's First Amended Complaint (ECF No. 8) this Court found that Plaintiff failed to plead facts that would support a finding of an arbitrary and irrational legislative action by Defendants because "[d]etermining that an entity with no fire equipment should no longer be recognized as a fire company and then amending the Township Code to reflect that judgment and alert residents of the new status quo is perfectly rational." ECF No. 27 at 13. In its Second Amended Complaint, Plaintiff attempts to cure this defect by shifting the focus of its argument for its substantive due process claim to the circumstances through which Plaintiff transferred away its firefighting assets in 2014. Plaintiff states that "the only 'rational basis' for terminating SFC's recognition based on a lack of firefighting assets was the produce of New Hanover Fire deceptively inducing SFC to transfer its assets under the false pretense that SFC would be included in New Hanover Volunteer or, at a minimum would retain its recognition." ECF No. 30 ¶ 163. Plaintiff argues that "the summary and pretextual approval of the Proposed Amendment was aimed at depriving SFC of its property, namely, its firefighting assets," and states that in passing the Amendment, Defendants "engaged in arbitrary and capricious action motivated by spite, bias, bad faith, and improper motives (such as political and/or personal gain) to eliminate SFC's protected property interests." ECF No. 30 ¶¶ 199–200.

Although Plaintiff makes various allegations regarding what it perceives to be wrongdoing involving New Hanover Fire and other third-party persons not present in this lawsuit in relation to the transfer of its property assets in 2014, the Court finds that, as set forth in the Second Amended Complaint, these allegations have no bearing on the Court's determination that

there exists a clear conceivable rational basis tied to a legitimate government interest for the
Board of Supervisors decision to delete SFC as a Township recognized fire company
approximately seven years later in 2021.[3] Taking into consideration the facts set forth in the
Second Amended Complaint, this Court, once again, find no difficulty in articulating a rational
basis for the contested action based on the allegations in the Second Amended Complaint.
Specifically, this Court finds that "[d]etermining that an entity with no fire equipment should no
longer be recognized as a fire company and then amending the Township Code to reflect that
judgment and alert residents of the new status quo" is rationally tied to the legitimate interest of
the safety, health, and public welfare of the Township. *See* ECF No. 27 at 13.

---

[3] Additionally, to the extent Plaintiff is alleging that its constitutional rights (due process or equal
protection) were violated in 2012 when it was  designated as a mutual aid fire company and lost
Township funding or in 2014 when it transferred its property to New Hanover Fire to be used
under the name New Hanover Volunteer, this Court finds that such claims are time-barred. Civil
lawsuits under § 1983 are subject to Pennsylvania's two-year statute of limitations. *See e.g.,
Lawrence v. Immigration & Naturalization Service*, 2021 WL 5447015, *1 (3d. Cir. Nov. 22,
2021) ("[t]he statute of limitations for civil rights suits under § 1983 in Pennsylvania is two
years"). Relevant here, the Third Circuit has noted that "[u]nder federal law a cause of action
accrues, and the statute of limitations begins to run, when the plaintiff knew or should have
known of the injury upon which its action is based." *Kach v. Hose*, 589 F.3d 626, 634 (3d. Cir.
2009). In the present matter, it is uncontested that Plaintiff was aware that it became designated
as a mutual aid fire company in 2012 and that the Township had eliminated its funding at that
time. ECF No. 30 ¶¶ 41–49. SFC was also aware that it transferred its firefighting assets to an
entity to be known as New Hanover Volunteer in 2014. *See e.g.,* ECF No. 30 Exhibit H. Further
Plaintiff alleges in its Second Amended Complaint that beginning as early as 2015 it was
precluded from using its assets to respond to fires by New Hanover Fire; thus, even if SFC was
misled in 2014 about the terms of the Petition to Transfer, its allegations regarding New Hanover
Fire precluding it from using the firefighting equipment and station to respond to emergencies as
early as 2015 indicate that SFC was aware that New Hanover Fire had full control over its
previously owned firefighting assets and that it was being excluded from participation in New
Hanover Volunteer. *Id.* ¶ 85. In sum, all of the prior allegations that Plaintiff argues the
Amendment "b[rought] to light" were facts Plaintiff reasonably should have known, and largely
even admits knowing, well before the Amendment was passed. *Id.* ¶ 3. Thus, Plaintiff's
argument that its constitutional claim "did not manifest as actionable until more recent events in
2021 where SFC was officially terminated as a Township-recognized volunteer fire company"
(*see* ECF No. 36 at 322), is fully without merit.

### iii.    Plaintiff also lacks a fundamental constitutional right.

This Court also previously found that Plaintiff failed to show that it had a fundamental constitutional interest in continuing to serve as a Township-recognized volunteer fire company or continuing to receive government-funded benefits. Plaintiff attempts to cure this defect, by again conclusively conflating the 2014 transfer of its firefighting assets with subsequent legislative actions taken by the Township stating that the "Township Defendants' utilized their governmental powers to deprive the members of SFC of their fundamental right to their property." ECF No. 30 ¶ 160.

Upon review of the Second Amended Complaint, however, this Court finds that this characterization of the events is simply not supported by the facts pled by Plaintiff in that the passage of the Amendment undisputedly did not take away any of SFC's property because SFC had admittedly already previously transferred its property to New Hanover Volunteer in 2014. ECF No. 30 Exhibit H. Accordingly, for the same reasons set forth in this Court's prior decision (*see* ECF No. 27) this Court finds that, once again, that Plaintiff has failed to plead that the adoption of the Amendment implicated any fundamental rights held by Plaintiff.

### B.    Denial of Equal Protection Claim is Dismissed.

### iv.    Standard of Review

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quoting *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 445 (1923)). "[A] classification neither involving fundamental rights nor proceeding along suspect lines ... cannot run afoul of the Equal Protection

Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 680 (2012) (quoting *Heller v. Doe,* 509 U.S. 312, 319–320 (1993)). "[W]here 'ordinary commercial transactions' are at issue, rational basis review requires deference to reasonable underlying legislative judgments." *Armour*, 566 U.S. at 680 (citations omitted). "[R]egulations that have differing impacts on various types of commercial entities, for example a city ordinance controlling advertising on delivery vehicles, violate the equal protection clause only if they are not rationally related to a legitimate state interest." *Price v. Cohen*, 715 F.2d 87, 92 (3d Cir. 1983) (citing *Ry. Express Agency v. New York,* 336 U.S. 106 (1949)) (explaining that more deference is provided when the classification is not based on race).

Equal protection claims may be brought by "a class of one", "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook*, 528 U.S. at 564 (citing *Sioux City Bridge Co.,* 260 U.S. 441; *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.,* 488 U.S. 336 (1989)).  To state a claim under "a class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill*, 455 F.3d at 239.

In the instant case, because we find above, that in its Second Amended Complaint Plaintiff failed to plead any fundamental right that was impacted in anyway by the Amendment and also find Plaintiff is not a member of a suspect class, we apply the rational basis standard of review to Plaintiff's claim for Defendants' violation of its right to equal protection.

> **v.     Plaintiff fails to state a claim for an equal protection claim under "a class of one" theory.**

Taking all of Plaintiff's facts as true and construing all allegations and reasonable inferences in the light most favorable to Plaintiff, this Court finds that Plaintiff once again fails to plead facts plausibly alleging that Defendants violated its constitutional right to equal protection. Plaintiff states that the Defendants "intentionally treated SFC differently from others similarly situated without a rational basis for the difference in treatment," and that "[u]nder the Equal Protection Clause, the Township Defendants owed a duty to SFC to afford SFC equal protections to those afforded New Hanover Fire." ECF No. 30 ¶¶ 212, 216. Plaintiff further provides that "SFC was deceptively induced into transferring its firefighting assets to New Hanover Fire, SFC and New Hanover Fire were similarly situated volunteer fire companies with similar assets, operations, facilities, and resources…[and that the] sole rational basis upon which the Township Defendants based their actions in passing [the Amendment] was SFC's lack of firefighting assets, which were deviously taken from SFC." *Id.* ¶ 214–15.

As previously discussed, we find no difficulty in articulating a rational basis for the contested actions based on the allegations in the Second Amended Complaint. It is rational for the Board of Supervisors to remove Plaintiff as a Township-recognized volunteer fire company after it transferred its fire equipment to the other fire company and Plaintiff no longer participated in formal emergency response. Even construing all allegations and reasonable inferences in the light most favorable to it, Plaintiff does not plead sufficient facts to show that it was similarly situated to any relevant entity at the time the Amendment was passed, or to show that the Amendment was not rationally related to a legitimate government interest. Accordingly, Plaintiff's claim fails.

        **a. Plaintiff fails to plead facts to show that it is similarly situated with New Hanover Volunteer or New Hanover Fire during the relevant time period.**

"Persons are 'similarly situated' for equal protection purposes when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).  Plaintiff must plead facts regarding details that would indicate it is similarly situated with others who have been treated differently. *See Joey's Auto Repair & Body Shop v. Fayette Cty.*, 785 F. App'x 46, 49 (3d Cir. 2019) (affirming dismissal of an equal protection claim where a plaintiff identifies one other business that could be considered similarly situated but do not provide any further details that would indicate that business is a similarly situated entity with specific examples of how they are alike in all relevant aspects).  Where differences between a plaintiff and others are significant, the courts do not find that the other entity is similarly situated with the plaintiff. *See, e.g.*, *Startzell*, 533 F.3d at 203; *S. Allegheny Pittsburgh Rest. Enterprises, LLC v. City of Pittsburgh*, 806 F. App'x 134, 143 (3d Cir. 2020) (affirming the district court's dismissal of a plaintiff's violation of equal protection claim where the plaintiff could not show other identified business were similarly situated with the plaintiff); *Parker Ave., L.P. v. The City of Philadelphia*, 660 F. App'x 156, 158–59 (3d Cir. 2016) (same); *Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 394 (3d Cir. 2010) (affirming summary judgment where plaintiff failed to show that it was similarly situated with other entities).

Plaintiff asks the Court to find that SFC was similarly situated to New Hanover Fire at the time SFC transferred its assets to New Hanover Fire to be known as New Hanover Volunteer. To support this argument, Plaintiff provides that VFIS's Fire Services Assessment shows that, in 2010, prior to the transfer of its assets SFC and New Hanover Fire were similarly situated fire companies. The Court finds, however, that these additional allegations are irrelevant as Plaintiff concedes that it did not function as a volunteer fire company in August 2021 when the Board of

22

Supervisors amended the Township Code and was thus *not* similarly situated to either New Hanover Volunteer or New Hanover Fire at that time. As explained in more detail above, this Court finds that SFC's 2014 transfer of firefighting assets is, for the purposes of this Court's analysis, largely unrelated to the 2021 passage of the Amendment because Plaintiff has failed to plead facts that sufficiently connect these two distinct events.

Accordingly, for the same reasons set forth in this Court's prior decision (*see* ECF No. 27 at 20–21), this Court finds that Plaintiff fails to plead facts to show that it was similarly situated to any relevant entity that would provide a basis for its equal protection claim.

**b. Plaintiff fails to show that the amendment to the Township Code is not rationally related to a legitimate government interest.**

"Rational basis review is a very deferential standard. It is met 'if there is any reasonably conceivable state of facts that could provide a rational basis for the differing treatment." *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 156–59 (3d Cir. 2018) (quoting *United States v. Walker*, 473 F.3d 71, 77 (3d Cir. 2007)). "[R]ational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Id.* (quoting *Heller*, 509 U.S. at 319) (internal quotation marks omitted). Equal protection is satisfied if "there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Id.* (quoting *Fitzgerald v. Racing Ass'n of Cent. Iowa*, 539 U.S. 103, 107 (2003)) (internal quotation marks omitted).

Plaintiff must meet a very high standard to allege that an action lacked a conceivable rational basis. Plaintiff does not meet that standard. As previously stated, this Court finds no difficulty in articulating a rational basis. Plaintiff's own allegations and the Amendment itself

provide a plausible rational basis for the Township's action. In applying rational basis review, we defer to the Board of Supervisors' "reasonable underlying legislative judgments." Accordingly, we dismiss Plaintiff's equal protection claim.

### C.   Violation of 42 U.S.C. § 1983, *Monell* Claim, is Dismissed.

#### i.   Standard of Review

"Local governing bodies . . . can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (footnote omitted). To plead a local government liability claim, a plaintiff must allege that the local government policy or custom was unconstitutional and that it inflicted an injury on plaintiff. *Id.* at 690, 694. "Policy is made when a decisionmaker possess[ing] final authority to establish [] [the] policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Est. of Roman*, 914 F.3d at 798 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

#### ii.   Plaintiff fails to plead facts to show that Defendants' actions give rise to a constitutional violation.

Plaintiff asserts that Defendants developed and maintained policies and customs that deprived Plaintiff of its constitutional rights causing a foreseeable harm to Plaintiff. *See* ECF No. 30 ¶ 220.  Plaintiff also asserts that Defendants failed to engage Plaintiff before approving the amendment to the Township Code, instead resorted to its "own self-serving policies and

procedures." *Id.* ¶ 226. As was the case with the First Amended Complaint, this Court finds that Plaintiff fails to state a *Monell* claim because it cannot establish a violation of its constitutional rights by Defendants or any employee or elected official. ECF No. 32 at 43–44.

Once again because we find, above, that Plaintiff fails to plausibly plead any violation of its constitutional rights, we find that Plaintiff fails to state a *Monell* claim. "[T]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution." *Monell*, 436 U.S. at 690. An ordinance may constitute a policy which gives rise to a local government liability if it results in a plaintiff's suffering, but the plaintiff must still satisfy *Monell* elements in order to prevail. *Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009) (citing *Doby v. DeCrescenzo,* 171 F.3d 858, 868 (3d Cir.1999)). Plaintiff fails to plead facts plausibly alleging that it was deprived of any constitutional rights due to Defendants' actions.  Accordingly, Plaintiff's *Monell* claim is dismissed.

### D.  The Court Uses its Discretion to Decline to Exercise Jurisdiction Over Plaintiff's Remaining State Law Claims.

#### i.    Standard of Review

A court "may decline to exercise supplemental jurisdiction [over state law claims] if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right," and thus, whether or not to exercise supplemental jurisdiction once all federal claims have been dismissed is within the discretion of the district court. *Hall-Wadley v. Maint. Dep't*, 386 F. Supp. 3d 512, 519 (E.D. Pa. 2019) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). "When all federal claims are eliminated before trial, 'the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy,

convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.' " *Id.* (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

        ii.    **Plaintiff's remaining state law claims will be dismissed without prejudice.**

In the present matter, as this case has not progressed past the motion to dismiss stage, and accordingly, the Court has not yet fully considered the merits of the newly added state law claims, the Court will decline to exercise supplemental jurisdiction over such claims. Plaintiff's claims of tortious interference with contractual relationships (Count IV) and commercial disparagement (Count V) will be dismissed without prejudice. Plaintiff may refile his state law claims in the appropriate state court if it chooses to do so.

## VI.    Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 32). Plaintiff's federal claims, (Counts I, II, and III) will be **DISMISSED WITH PREJUDICE** and the Court will decline to exercise supplemental jurisdiction over the remaining state law claims (Counts III and IV), which will be **DISMISSED WITHOUT PREJUDICE**. An appropriate order follows.

                                      **BY THE COURT:**

                                      **/s/ *Chad F. Kenney***

                                      _____

                                      **CHAD F. KENNEY, JUDGE**